# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURGH, PA,

        Plaintiff and
        Counterdefendant,

        v.

TRIUMVIRATE, LLC, d/b/a Tordrillo
Mountain Lodge, *et al.,*

        Defendants and
        Counterclaimants.

Case No. 3:23-cv-00146-SLG

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Pending at Docket 51 is Defendants and Counterclaimants Triumvirate, LLC
d/b/a Tordrillo Mountain Lodge, Michael Rheam, Michael Overcast, Jennifer
Overcast, and Thomas Moe's (collectively "Defendants") Motion for Partial
Summary Judgment.[1]   Plaintiff and Counterdefendant National Union Fire
Insurance Company of Pittsburgh, PA ("National Union") responded in opposition
at Docket 70 and Defendants replied at Docket 86.

Also pending at Docket 71 is National Union's Cross-Motion for Summary
Judgment.[2]  Defendants responded in opposition at Docket 86 and National Union

---

[1] Defendants' sealed motion is at Docket 53-3.  For ease of reference, where the parties have
filed both a public, redacted filing and a sealed filing, the Court refers to the sealed version.

[2] National Union's sealed Memorandum in Opposition to Defendants' Motion for Partial Summary

replied at Docket 88.[3]

Also pending, at Docket 86, is Defendants' Cross-Motion for Summary Judgment and Alternative Rule 56(d) request. National Union responded in opposition at Docket 88 and Defendants replied at Docket 95.[4]

The Court took the motions under advisement following oral argument on December 11, 2024.[5]

The Court has jurisdiction based on diversity of citizenship.[6]

## BACKGROUND

This is an action for declaratory relief in which National Union, an insurance company, seeks a declaratory judgment that it does not have a duty to defend Triumvirate, LLC ("Triumvirate"), Michael Rheam, Michael Overcast, Jennifer Overcast, and Thomas Moe (collectively, the "Individual Defendants") in a state court action related to a 2021 accident or indemnify them for damages arising from that action.[7] Defendants counterclaimed that National Union has a duty to defend

---

Judgment and in Support of Cross-Motion for Summary Judgment is at Docket 74-1.

[3] National Union's sealed opposition is at Docket 90-1.

[4] Defendants' sealed reply is at Docket 97-1.

[5] Docket 160. There are several other pending motions that the Court will be addressing by separate order.

[6] 28 U.S.C. § 1332.

[7] Docket 24 at ¶¶ 36–50.

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, LLC, et al.*
Order on Motions for Summary Judgment
Page 2 of 37

and indemnify them and breached the duty of good faith and fair dealing in refusing to do so.[8]

## I.    The March 27, 2021 Accident

The following facts regarding the accident appear to be largely undisputed:

On March 27, 2021, Triumvirate chartered a helicopter and a pilot from Soloy Helicopters ("Soloy") for a heli-skiing trip organized by Triumvirate, a heli-ski operator, in the Chugach Mountains near Palmer, Alaska.[9]  The helicopter departed from a private residence in Wasilla in the afternoon, traveled to the Chugach Mountains, and facilitated five or six ski runs without incident.[10]  Before the last ski run of the outing, at about 6:36 p.m., the pilot attempted to land on a ridgeline, but due in part to whiteout conditions, crashed into the ridge.[11]  After the crash, the main wreckage of the helicopter came to rest about 500 feet below the point of initial impact.[12]

There was considerable delay in initiating a rescue after the helicopter crashed.  Ultimately, the Alaska Air National Guard dispatched a rescue helicopter, which arrived at the scene of the wreckage at 11:25 p.m., and was able to deliver

---

[8] Docket 26 at 16–20.

[9] Docket 51-2 at 2, 7.  The parties do not dispute that Triumvirate is the "local lodge" identified in the NTSB's Aviation Investigation Final Report.

[10] Docket 51-2 at 7–8.

[11] Docket 51-2 at 2, 7–8, 11.

[12] Docket 51-2 at 11.

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, LLC, et al.*
Order on Motions for Summary Judgment
Page 3 of 37

Case 3:23-cv-00146-SLG    Document 168    Filed 01/14/25    Page 3 of 37

rescue personnel to the wreckage at 12:15 a.m.—five hours and 40 minutes after the accident.[13]

Five of the six passengers on board the helicopter at the time of the accident died at the scene of the crash.[14]  The surviving passenger, David Horvath, was extricated from the wreckage of the helicopter nearly six hours after the crash.[15] Mr. Horvath represents that he lost his fingertips on one hand and lost four of his fingers on his other hand, broke his ribs, suffered knee injuries, and experienced physical and emotional distress.[16]

Following the accident, the National Transportation Safety Board ("NTSB") investigated and concluded that the probable causes of the accident related to the helicopter pilot's failure to adequately respond to the whiteout conditions and Soloy's "inadequate pilot training program and pilot competency checks."[17]  The NTSB also concluded that "[c]ontributing to the severity of the surviving passenger's injuries was the delayed notification of search and rescue organizations."[18]

---

[13] Docket 51-2 at 16.

[14] Docket 51-2 at 2, 16.

[15] Docket 51-2 at 2, 16.

[16] Docket 51-14 at 9–11.

[17] Docket 51-2 at 5.

[18] Docket 51-2 at 6.

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, LLC, et al.*
Order on Motions for Summary Judgment
Page 4 of 37

## II.    The Insurance Policies

At the time of the crash in March 2021, Soloy had an aviation insurance policy ("the Policy") with National Union under which the helicopter was covered.[19] In January 2021, Soloy executed a Heli-Skiing Contract Agreement with Triumvirate in which Soloy agreed to provide helicopters and pilots to Triumvirate for use in its heli-skiing operations.[20]    Pursuant this agreement, Soloy agreed to add Triumvirate, LLC as an "Additional Insured" to the Policy.[21]    Soloy duly acquired an Additional Insured Endorsement, which specified that persons "as required by [Soloy]" "are included as additional Insured under liability coverages, but only as respects operations of [Soloy]."[22]

The Policy provided coverage for "Single Limit Bodily Injury and Property Damage Liability":

> To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of Bodily Injury sustained by any person [including Passengers] and Property Damage, caused by an Occurrence and arising out of the ownership, maintenance or use of the Aircraft . . . ."[23]

---

[19] Docket 51-4 at 2 (providing that the Policy Period was from June 7, 2020 to June 7, 2021), 118 (identifying the helicopter as a covered aircraft); Docket 51-2 at 2 (identifying the same helicopter, registration number N351SH, as involved in the accident).

[20] Docket 70-3 at 4 (specifying that "this Agreement shall be for a period of 1 year commencing January 3rd, 2021 and ending January 3rd, 2022").

[21] Docket 70-3 at 5.

[22] Docket 51-4 at 83.

[23] Docket 51-4 at 5.

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, LLC, et al.*
Order on Motions for Summary Judgment
Page 5 of 37

Case 3:23-cv-00146-SLG    Document 168    Filed 01/14/25    Page 5 of 37

The Policy defines "Occurrence" as:

> [A]n accident, including continuous or repeated exposure to conditions, which results in Bodily Injury or Property Damage during the policy period neither expected nor intended from the standpoint of the Insured. In the event of continuing or progressively deteriorating damage over any length of time, such damage shall be deemed to be one Occurrence, and shall be deemed to occur only when such damage first commences.[24]

The Policy further defines "Insured" to include "not only the Named Insured but also any person while using or riding in the Aircraft and any person or organization legally responsible for its use, provided the actual use is with the express permission of the Named Insured."[25] The Policy limits the total liability "for all damages, including all Related Claims" with respect to "aircraft operating for heli-ski operations" to $1,000,000.00 per person.[26] In addition to providing coverage for bodily injury, the Policy provides:

> [National Union] shall have the right and duty to defend any suit against the Insured seeking damages on account of such Bodily Injury or Property Damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but [National Union] shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of [National Union]'s liability has been exhausted by payment of judgments or settlements.[27]

---

[24] Docket 51-4 at 16.

[25] Docket 51-4 at 15.

[26] Docket 51-4 at 12, 102.

[27] Docket 51-4 at 5.

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, LLC, et al.*
Order on Motions for Summary Judgment
Page 6 of 37

At the time of the accident, Triumvirate separately had a Commercial Liability Insurance Policy from Prime, on which Soloy was listed as an additional insured.[28]

### III.    The Horvath Settlement

Shortly after the accident, National Union retained an attorney, Caryn Jorgensen, to represent Soloy with respect to claims related to the crash.[29] Similarly, Prime retained attorney Timothy Lamb of Delaney Wiles to represent Triumvirate "and its employees, if necessary, related to the helicopter crash on March 27, 2021."[30]  In April 2021, Mr. Horvath retained attorney Tracey Knutson to represent him in connection with any claims against Soloy and Triumvirate and all other claims related to the helicopter crash.[31]

Over a period of months, Ms. Knutson communicated with Ms. Jorgensen and, to a far lesser extent, with Mr. Lamb, in settlement negotiations with respect to Mr. Horvath's claims against Soloy and Triumvirate.[32]   During these negotiations, Ms. Knutson repeatedly told Ms. Jorgensen that she objected to the release of Triumvirate's liability related to the delayed rescue in the aftermath of

---

[28] Docket 70-5.

[29] Docket 70-6.

[30] Docket 73-1 (SEALED).

[31] Docket 73-3 (SEALED).

[32] *See, e.g.*, Docket 73-5 (SEALED) to Docket 73-36 (SEALED).

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, LLC, et al.*
Order on Motions for Summary Judgment
Page 7 of 37

the crash.[33]  Ms. Knutsen also expressly requested that Ms. Jorgensen not share these thoughts with Tim Lamb or others associated with Triumvirate.[34]  Prime refused to participate in any settlement negotiations with Solon, as it maintained that it had no duty to defend or indemnify Soloy because "there is no coverage [under Triumvirate's commercial liability policy] for Soloy as the March 27, 2021 accident arose out of a helicopter accident."[35]

In early 2022, Mr. Horvath, Soloy, and National Union arrived at a proposed settlement agreement in which Mr. Horvath would execute a release of claims against Soloy and Triumvirate in exchange for payment of Soloy's Policy limits.[36]  In February 2022, National Union provided Mr. Lamb with a copy of the proposed release.[37]  Andrew Wright, an attorney representing Prime; Michael Grisham, an attorney representing Triumvirate; and Mr. Lamb all objected to the terms of the proposed release.[38]  Mr. Lamb, writing on behalf of Triumvirate, noted that "the proposed Release of Claims against Triumvirate . . . is not as comprehensive and

---

[33] *See* Docket 73-12 (SEALED).

[34] Docket 73-12 (SEALED) at 4.

[35] Docket 70-37 (December 21, 2021 letter).

[36] Docket 73-28 (SEALED).

[37] *See* Docket 73-32 (SEALED) at 4.

[38] Docket 161-1 (Mr. Wright's February 14, 2022 letter to Ms. Jorgensen); Docket 73-30 (SEALED) (Mr. Grisham's February 8, 2022 letter to Ms. Jorgenson); Docket 73-29 (SEALED) (Mr. Lamb's misdated letter to Mr. Houghton at National Union).

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, LLC, et al.*
Order on Motions for Summary Judgment
Page 8 of 37

protective as the Release for Soloy."[39]  Nonetheless, on February 11 and 15, 2022,

Mr. Horvath and his attorney signed a "Confidential Settlement Agreement,

Receipt and Release of Specified Claims."[40]  In the release, Mr. Horvath released

all claims against Soloy

> based upon, on account of, arising out of, or in any way resulting from
> the helicopter accident, including its aftermath, that occurred on or
> about March 27, 2021 near Knik Glacier (the "Accident") in which
> David Horvath was injured, including but not limited to claims for
> bodily injury arising out of the ownership, maintenance or use of
> helicopter N35ISH ("the Helicopter"), and any claim for injuries
> allegedly caused by delay in initiating rescue efforts regardless of the
> cause of such delay.[41]

Further, Mr. Horvath released all claims against Triumvirate and its agents and

employees "based upon, on account of, arising out of, or in any way resulting from

[Soloy's] operations, the ownership, maintenance or use of the Helicopter on

March 27, 2021, or [Triumvirate's] selection, chartering, use, operation, rental,

service, maintenance, or entrustment to others of the Helicopter (the 'Helicopter

Operation Claims.')"[42]  Crucially, the release of claims against Triumvirate did not

include the language in the release of claims against Soloy that released Soloy

---

[39] Docket 73-29 (SEALED) at 1.

[40] Docket 53-2 (SEALED); Docket 73-35 (SEALED).

[41] Docket 53-2 (SEALED) at 2.

[42] Docket 53-2 (SEALED) at 2–3.

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, LLC, et al.*
Order on Motions for Summary Judgment
Page 9 of 37

Case 3:23-cv-00146-SLG    Document 168    Filed 01/14/25    Page 9 of 37

from "any claim for injuries allegedly caused by delay in initiating rescue efforts regardless of the cause of such delay."[43]

## IV. Mr. Horvath's State Court Action

On March 28, 2023, Mr. Horvath initiated a lawsuit against Triumvirate and one of its owners, Michael Rheam, in Alaska Superior Court.[44] The Complaint asserted negligence and gross negligence claims against the defendants for their failure to take appropriate steps in the aftermath of the helicopter crash.[45] Among other claims, the Complaint alleged that Triumvirate failed in its duties with respect to communications protocols with the helicopter, flight following, and timely initiating an emergency plan, and that, as a result, Mr. Horvath suffered many physical injuries and severe emotional distress.[46] On October 19, 2023, Mr. Horvath filed a Second Amended Complaint, which added as defendants Michael Overcast, Jennifer Overcast, and Thomas Moe, the remaining Triumvirate owners.[47] The Second Amended Complaint also adds additional claims, including a claim that seeks to pierce Triumvirate's corporate veil and hold the four individual

---

[43] *See* Docket 53-2 (SEALED) at 2–3.

[44] Docket 70-56 (complaint).

[45] Docket 70-56 at ¶¶ 20–33.

[46] Docket 70-56 at ¶¶ 21–37.

[47] Docket 70-57 at ¶ 2.

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, LLC, et al.*
Order on Motions for Summary Judgment
Page 10 of 37

Case 3:23-cv-00146-SLG     Document 168     Filed 01/14/25     Page 10 of 37

members—Michael Overcast, Jennifer Overcast, Michael Rheam, and Thomas Moe—individually liable for any damages.[48]

Triumvirate tendered the defense of this state court action to National Union under the Soloy Policy.[49]  In July 2023, National Union refused to defend the suit, asserting "there is no coverage – defense or indemnity – available to [Triumvirate] and Mr. Rheam for the Horvath Action."[50]  National Union wrote:

> As an initial matter, Mr. Rheam is not an additional insured under the Policy. Although an additional insured under the Policy, [Triumvirate] is not entitled to defense or indemnity under the Policy as the applicable policy limits have already been exhausted by settlement, and additionally, because the claims in the Horvath Action fall outside the available additional insured coverage afforded to [Triumvirate] under the Policy.[51]

National Union explained that the prior settlement of Mr. Horvath's claims against Soloy and Triumvirate exhausted the limits of liability coverage under the Policy:

> Therefore, regardless of whether the liability alleged in the Horvath Action does or does not potentially fall within the insuring agreement of the Policy and the additional insured endorsement making [Triumvirate] an additional insured, Insurers have no obligation to defend or indemnify [Triumvirate] (or Mr. Rheam even if he were an Additional Insured, which he is not) for the Horvath Action per the plain language of the Policy.[52]

---

[48] Docket 70-57 at ¶¶ 40–42.

[49] *See* Docket 51-6 at 1 (July 5, 2023 letter).

[50] Docket 51-6 at 3.

[51] Docket 51-6 at 3.

[52] Docket 51-6 at 13.

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, LLC, et al.*
Order on Motions for Summary Judgment
Page 11 of 37

Further, National Union noted that the claims in the state court action "are solely in connection with their failure to take appropriate action **after** the accident when it was clear that the Helicopter was overdue to return from its flight and Mr. Horvath only seeks damages for injuries that he claims he would not have suffered but for these failures."[53] "As such, not only did the 'bodily injury' claimed by Mr. Horvath in the Horvath Action not 'aris[e] out of the ownership, maintenance or use of the Aircraft', but even if it did, the claims against [Triumvirate] are not 'as respects operations of the Named Insured [Soloy].'"[54]

National Union then filed this suit to determine its obligations to defend and indemnify.[55] Defendants answered and counterclaimed, asserting that "National Union did not inform Triumvirate about the existence or status of its settlement negotiations with Mr. Horvath and did not allow any Defendants to participate."[56] They also allege that Triumvirate's counsel objected to the settlement because it failed to include a full release of all claims by Mr. Horvath against Triumvirate, but was instead limited to "Helicopter Operations Claims."[57] Further, they claim that, when Mr. Horvath filed his state court action, National Union refused to defend

---

[53] Docket 51-6 at 13 (emphasis in original).

[54] Docket 51-6 at 14 (first and third alterations in original).

[55] Docket 24 at ¶¶ 36–50.

[56] Docket 26 at 14, ¶ 14.

[57] Docket 26 at 15, ¶¶ 16–18.

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, LLC, et al.*
Order on Motions for Summary Judgment
Page 12 of 37

Case 3:23-cv-00146-SLG    Document 168    Filed 01/14/25    Page 12 of 37

them.[58]  Accordingly, they assert counterclaims for (1) a declaratory judgment that National Union owes a duty of defense and indemnity to the Individual Defendants as additional insureds on the Soloy Policy; (2) a declaratory judgment that National Union owes a duty of defense and indemnity to Triumvirate; and (3) bad faith, based on National Union's alleged failure to adequately communicate with Defendants during its settlement negotiations with Mr. Horvath, its devising of the terms of the settlement to limit the scope of Triumvirate's release, and its refusal to defend Defendants in the state court action.[59]

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The burden of showing the absence of a genuine dispute of material fact lies with the movant.[60] If the movant meets this burden, the non-moving party must demonstrate "specific facts showing that there is a genuine issue for trial."[61]  The non-moving party may not rely on "mere allegations or denials";[62] rather, to reach the level of a genuine

---

[58] Docket 26 at 15-16, ¶¶ 20–26.

[59] Docket 26 at 16-20, ¶¶ 27–48.

[60] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[61] *Id.* at 324 (quoting Fed. R. Civ. P. 56(e) (1986)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

[62] *Anderson*, 477 U.S. at 248 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253,

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, LLC, et al.*
Order on Motions for Summary Judgment
Page 13 of 37

dispute, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party."[63]  When considering a motion for summary judgment, a court views the facts in the light most favorable to the non-moving party and draws "all justifiable inferences" in the non-moving party's favor.[64]

## DISCUSSION

Defendants initially sought partial summary judgment on their second counterclaim for a declaratory judgment on whether the Policy requires National Union to defend and/or indemnify Triumvirate against the claims Mr. Horvath asserts in state court.[65]  National Union, in its cross-motion, sought summary judgment on its declaratory judgment claims that it has no duty to defend or indemnify Triumvirate or its four members.[66]  Defendants then cross-moved for summary judgment on Counts I and II of its Counterclaims—that National Union has a duty to defend and indemnify not only Triumvirate, but also each of Triumvirate's four members.[67]  Alternatively, Defendants request a Rule 56(d) extension if resolution of the claims for declaratory judgment first requires a ruling

---

288 (1968)).

[63] *Id.*

[64] *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

[65] *See generally* Docket 53-3 (SEALED).

[66] *See generally* Docket 74-1 (SEALED); *see also* Docket 24 at ¶¶ 36–50.

[67] Docket 86 at 2.

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, LLC, et al.*
Order on Motions for Summary Judgment
Page 14 of 37

Case 3:23-cv-00146-SLG    Document 168    Filed 01/14/25    Page 14 of 37

on their counterclaim for bad faith, on which discovery continues.[68]  Neither party

has sought summary judgment on Defendants' bad faith counterclaim.

## I.    The Policy Covers Injuries Mr. Horvath Alleges He Suffered Due to the Delayed Rescue Following the Helicopter Crash.

Defendants assert that National Union has a duty to defend and indemnify

them because the accident and Triumvirate's response constitute a single event

arising out of the use of the aircraft—an "occurrence" that is covered by the

Policy.[69]  In their view, Alaska law provides that a duty to defend arises when a

covered event "may be viewed as a proximate cause of the injuries" and Mr.

Horvath's injuries in the aftermath of the crash were proximately caused by the

crash.[70]  Defendants further highlight that the terms of Mr. Horvath's release of

Soloy recognize that claims related to the aftermath of the crash result from the

crash.[71]  And they assert that "accident," which the Policy does not define, should

be reasonably interpreted to encompass the alleged lack of training prior to the

crash, the crash itself, and the ensuing rescue.[72]  Defendants further contend that,

_____

[68] Docket 86 at 8 n.12.

[69] Docket 53-3 (SEALED) at 15–23.

[70] Docket 53-3 (SEALED) at 17 (emphasis omitted) (citing *C.P. ex rel. M.L. v. Allstate Ins. Co.*, 996 P.2d 1216, 1224 (Alaska 2000)).

[71] Docket 53-3 (SEALED) at 18 (releasing all claims against Soloy "resulting from the helicopter accident, including its aftermath" (quoting Docket 53-2 (SEALED) at 2)).

[72] Docket 53-3 (SEALED) at 19–23.

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, LLC, et al.*
Order on Motions for Summary Judgment
Page 15 of 37

Case 3:23-cv-00146-SLG     Document 168     Filed 01/14/25     Page 15 of 37

even if the Court finds there is no duty to indemnify Triumvirate, there is nonetheless a duty to defend against claims that are potentially within the Policy.[73]

National Union responds that the Policy does not require it to defend or indemnify Mr. Horvath's claims because the Policy's limits have been exhausted.[74] Additionally, National Union maintains that any claim that Mr. Horvath did not release against Triumvirate falls outside the coverage of the Policy, as the release provision for Triumvirate closely mirrors, and therefore is coextensive with, the Policy's coverage provision.[75] Alternatively, National Union submits that the long delay in initiating the rescue "acted as an event sufficiently independent to disrupt any causal link that may be found between the helicopter crash and the injuries."[76]

"Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law."[77] Whether declaratory relief is proper is a procedural matter, so federal procedural law—the Declaratory Judgment Act,

---

[73] Docket 53-3 (SEALED) at 28–31.

[74] Docket 74-1 (SEALED) at 28–32.

[75] Docket 74-1 (SEALED) at 37–39.

[76] Docket 74-1 (SEALED) at 39–42.

[77] *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996).

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, LLC, et al.*
Order on Motions for Summary Judgment
Page 16 of 37

28 U.S.C. § 2201—applies.[78] "State law, however, controls the substantive issues . . . ."[79]

Under the Declaratory Judgment Act, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration."[80] Here, the requested declaratory relief hinges on the Court's interpretation of the Policy. "The construction of an insurance contract is a matter for the court, unless its interpretation is dependent upon the resolution of controverted facts."[81] "In addressing the proper interpretation of an insurance policy [under Alaska law], [courts] look to (1) the language of the disputed provisions in the policy, (2) other provisions in the policy, (3) extrinsic evidence, and (4) case law interpreting similar provisions."[82] "Insurance policies are construed in such a way as to honor the reasonable expectations of a layperson seeking coverage."[83] Alaska law requires

---

[78] *Douglass v. Bank of Am. Corp.*, Case No. CV-12-0609-JLQ, 2013 WL 2245092, at *5 (E.D. Wash. May 21, 2013); *see also Golden Eagle Ins. Co. v. Travelers Cos.*, 103 F.3d 750, 752 (9th Cir. 1996), *overruled on other grounds by Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998) (en banc).

[79] *Diversified Cap. Invs., Inc. v. Sprint Commc'ns, Inc.*, Case No. 15-cv-03796-HSG, 2016 WL 2988864, at *9 (N.D. Cal. May 24, 2016).

[80] 28 U.S.C. § 2201.

[81] *O'Neill Investigations, Inc. v. Ill. Emp. Ins. of Wausau*, 636 P.2d 1170, 1173 (Alaska 1981) (citations omitted).

[82] *State Farm Mut. Auto. Ins. Co. v. Houle*, 269 P.3d 654, 657–58 (Alaska 2011).

[83] *United Servs. Auto. Ass'n v. Neary*, 307 P.3d 907, 910 (Alaska 2013); *see also Safety Nat'l Cas. Corp. v. Pac. Emps. Ins. Co.*, 927 P.2d 748, 750 (Alaska 1996) (internal quotation marks and citations omitted) ("Insurance contracts are interpreted in accordance with the reasonable

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, LLC, et al.*
Order on Motions for Summary Judgment
Page 17 of 37

Case 3:23-cv-00146-SLG    Document 168    Filed 01/14/25    Page 17 of 37

that courts construe ambiguity in insurance policies in favor of the insured.[84]  But "ambiguity exists only when the contract, taken as a whole, is *reasonably* subject to differing interpretations."[85]

The Court will first address whether there is a duty to defend or indemnify, without considering the fact that the Policy's limits have been exhausted.  The Policy covers "damages because of Bodily Injury sustained by any person [including Passengers] and Property Damage, caused by an Occurrence and arising out of the ownership, maintenance or use of the Aircraft."[86]  The Policy also defines "occurrence" to mean "an accident, including continuous . . . exposure to conditions, which results in Bodily Injury or Property Damage during the policy period neither expected nor intended from the standpoint of the Insured. In the event of continuing . . . damage over any length of time, such damage shall be deemed to be one Occurrence, and shall be deemed to occur only when such damage first commences."[87]

---

expectations of the insured. This is true even if painstaking study of the policy provisions would have negated those expectations.").

[84] *Allstate Ins. Co. v. Falgoust*, 160 P.3d 134, 138 (Alaska 2007).

[85] *Downing v. Country Life Ins. Co.*, 473 P.3d 699, 704 (Alaska 2020) (internal quotation marks and citations omitted) (emphasis in original).

[86] Docket 51-4 at 2, 5.

[87] Docket 51-4 at 16.

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, LLC, et al.*
Order on Motions for Summary Judgment
Page 18 of 37

Injuries that Mr. Horvath suffered in the aftermath of the helicopter crash due to the delayed rescue are covered by the Policy as they constitute bodily injuries "caused by an Occurrence and arising out of the . . . use of the Aircraft."[88]  First, these alleged injuries were "caused by an Occurrence."  The language of the Policy suggests that an "occurrence" includes both the helicopter accident in this case and the period of time that immediately followed the crash until rescuers arrived. For in its definition of "occurrence," the Policy explicitly states that "[i]n the event of continuing . . . damage over any length of time, such damage shall be deemed to be one Occurrence, and shall be deemed to occur only when such damage first commences."[89]  Here, Mr. Horvath's injuries, which he alleges were exacerbated by the delay in rescue, are the type of "continuing . . . damage" expressly covered by the Policy.

Case law in Alaska and other jurisdictions supports finding a single occurrence when a single, unforeseen event results in multiple injuries that can be traced to negligence during, before and after that event. In *United Services Automobile Ass'n v. Neary*, the Alaska Supreme Court analyzed an occurrence-based policy similar to the Policy here.[90]  There, the Court considered whether a single gunshot that physically injured multiple children and emotionally injured their

---

[88] Docket 51-4 at 2, 5.

[89] Docket 51-4 at 16.

[90] 307 P.3d 907 (Alaska 2013).

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, LLC, et al.*
Order on Motions for Summary Judgment
Page 19 of 37

parents upon witnessing the harm to their children was a single "occurrence," which the relevant insurance policy defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results . . . in . . . bodily injury."[91]  The plaintiffs argued that each injury, including the parents' later emotional injuries, constituted a separate occurrence. But the Court concluded that "[t]here was a single accident in this case—the unforeseen and unexpected firing of the single gunshot that caused all of the plaintiffs' injuries—and therefore a single occurrence for purposes of liability coverage."[92] The Court additionally noted that "[u]nder our case law it is the unforeseen event, not every act of negligence preceding it, that constitutes the accident or occurrence for purposes of insurance coverage."[93]  This tracks the reasonable expectations of the insured, as it is "unlikely that the ordinary insured who hears of an accident . . . will mentally convert that single event into some other number of accidents depending on the number of negligent acts and omissions that led up to it."[94]

The Third Circuit followed a similar logic in *Fleming ex rel. Est. of Fleming v. Air Sunshine, Inc.* in concluding that a plane crash and the subsequent negligent rescue acts were one occurrence under an occurrence-based policy, which

---

[91] *Id.* at 912–13.

[92] *Id.* at 912–15.

[93] *Id.* at 913.

[94] *Id.* at 915.

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, LLC, et al.*
Order on Motions for Summary Judgment
Page 20 of 37

Case 3:23-cv-00146-SLG    Document 168    Filed 01/14/25    Page 20 of 37

included a provision addressing continuing damage similar to that in the Policy at issue here.[95]  In that case, the surviving spouse of a commercial airline passenger who had drowned following a plane crash sued the airline.[96]  The spouse argued that the husband's death by drowning was a separate occurrence from the plane crash under the policy's terms.  But the Third Circuit disagreed and held that "[a]ny post-crash incidents stemmed from the extreme risk and disorder resulting from the collision."[97]  The Third Circuit, like the Alaska Supreme Court in *Neary*, looked to the average person's expectations and noted that the crash itself and the subsequent failure to assist the passenger to exit the submerged plane were so closely linked in time and space  "as to be considered by the average person as one event."[98]

*Neary* and *Fleming* are instructive in this case.  Mr. Horvath alleges he suffered discrete additional injuries associated with the delay in initiating a rescue operation after the helicopter crash.  But these injuries arose out of the single unforeseen event—the helicopter crash.  The delayed rescue is reasonably encompassed within the Policy's "continuing damage" definition of an occurrence.  Further, the crash was closely linked in time and space to the hours-long delay in

---

[95] 311 F.3d 282, 295 (3d Cir. 2002).

[96] *Id.* at 284.

[97] *Id.* at 295.

[98] *Id.* (internal quotation marks omitted) (quoting *Welter v. Singer,* 376 N.W. 2d 84, 87 (Wis. 1985)).

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, LLC, et al.*
Order on Motions for Summary Judgment
Page 21 of 37

rescue such that an average person would consider the crash and subsequent rescue effort as a single event. Although the time between the airplane crash in *Fleming* and the subsequent allegedly negligence acts was minutes rather than hours, this Court finds that the hours-long delay, during which time the helicopter wreckage was on the mountain, would not cause an average person to distinguish the crash and the delayed rescue as two distinct events. And Mr. Horvath's claim against Triumvirate is for the entire six-hour period, beginning immediately after the crash, and indeed alleges negligent operations by Triumvirate prior to the crash itself.[99] Therefore, the crash itself and the alleged delay in initiating the rescue constitute a single occurrence for purposes of the Policy.

Next, the Court considers whether Mr. Horvath's asserted injuries "aris[e] out of the . . . use of the Aircraft."[100] Alaska courts have looked to three general factors to determine if an injury arose from the use of a vehicle: "(1) [t]he extent of causation between the [vehicle] and the injury; (2) [w]hether an act of independent significance occurred, breaking the causal link between 'use' of the vehicle and the injuries inflicted; and (3) [w]hat type of 'use' of the [vehicle] was involved."[101] With respect to the first factor, "[t]he vehicle must be an 'active accessory' for there to

---

[99] *See* Docket 24-2.

[100] Docket 51-4 at 2, 5.

[101] *Kalenka v. Infinity Ins. Cos.*, 262 P.3d 602, 609 (Alaska 2011) (citation omitted).

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, LLC, et al.*
Order on Motions for Summary Judgment
Page 22 of 37

be an adequate causal relationship."[102]  However, an insured need not show that their injuries were proximately caused by the use of a vehicle.  In *C.P. ex rel. M.L. v. Allstate Insurance Co.*, the Alaska Supreme Court interpreted an insurance policy that provided coverage for injuries "arising from an accident."[103]  In that case, the parents of a child who had been sexually assaulted by the adult son of the homeowners brought suit against the homeowners.[104]  The homeowners' insurer argued that the child's damages did not arise from an accident.[105]  But the Court held that the negligent supervision claim against the homeowners was within the homeowners' liability coverage.  The Court reasoned that the phrase "arising from an accident" "does not incorporate any requirement that an accident have been '*the* proximate cause.' Nor does it foreclose coverage if an accident was only 'a' cause."[106]  Rather, the Court held that "[t]he language 'arising from' is consistent with multiple causes" and "that a claimant need only prove that a breach of duty is 'a' proximate cause of harm, not 'the' proximate cause."[107]

---

[102] *Id.* at 609 (citation omitted).

[103] 996 P.2d 1216, 1223–24 (Alaska 2000).

[104] *Id.* at 1218.

[105] *Id.* at 1223.

[106] *Id.* at 1224 (emphasis in original).

[107] *Id.*

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, LLC, et al.*
Order on Motions for Summary Judgment
Page 23 of 37

Case 3:23-cv-00146-SLG     Document 168     Filed 01/14/25     Page 23 of 37

As recently as 2024, the Alaska Supreme Court has "reaffirmed the broad nature of a[n] . . . insurance policy's 'arising from' coverage provision," noting that an injury can "arise from" an event, even if that event would not constitute a proximate cause of the injury.[108]

Clearly, all of Mr. Horvath's alleged injuries arise from the use of the helicopter in this case, even if the delay in initiating a rescue was an additional cause. The crash, to which the helicopter was an "active accessory," exposed Mr. Horvath to winter conditions and physical and emotional trauma. Thus, the helicopter crash was at least a contributing cause of the physical and mental injuries Mr. Horvath alleges he suffered in the crash's aftermath.[109]

Next, the Court considers whether an "act of independent significance occurred, breaking the causal link between 'use' of the vehicle and the injuries inflicted."[110] National Union maintains that Triumvirate's "alleged long delay in sending out a rescue team was independent from the transportation by the Helicopter, such that [Triumvirate's] delay acted as an event sufficiently

---

[108] *Thompson v. United Services Auto. Ass'n*, 542 P.3d 222, 224, 227 (Alaska 2024) (interpreting a homeowner's insurance provision that excluded liability for "bodily injury . . . [a]rising out of . . . the ownership, maintenance, use, loading or unloading of . . . an 'aircraft,'" to bar coverage even though the claimant was injured while moving an inoperable, partially disassembled airplane) (alterations in original)).

[109] *See* Docket 70-57 at ¶¶ 28, 31, 35, 39, 44, 46 (alleging that Mr. Horvath suffered unspecified "life altering physical and emotional injuries that would not otherwise have been incurred" absent the delayed rescue).

[110] *Kalenka*, 262 P.3d at 609.

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, LLC, et al.*
Order on Motions for Summary Judgment
Page 24 of 37

Case 3:23-cv-00146-SLG     Document 168     Filed 01/14/25     Page 24 of 37

independent to disrupt any causal link that may be found between the helicopter crash and the injuries."[111]   In its view, the length of delay, over five hours, differentiates this case from others and suggests that the delay was an intervening event.[112]

In *Kalenka*, the policyholder was injured when, after he was involved in a rear-end collision, another driver stabbed him multiple times during a fight that ensued outside the vehicle.[113]   The Alaska Supreme Court concluded that the stabbing was an act of independent significance that broke the causal chain between the use of the vehicle and the injury because the drivers had both exited their vehicles prior to the assault.[114]  Further, the Court noted that the vehicle was "only the subject of their fight; [it] played no role in the fight itself," such that there was "insufficient causation" for Kalenka's death to have arisen out of the "use" of the vehicle.[115] By contrast, in *Shaw v. State Farm Mutual Automobile Insurance Cos.*, although the Court found the material facts to be in dispute, it allowed for the possibility that a driver's use of his truck to trap another driver in a position in order to shoot her was not necessarily "an act of independent significance."[116]  The Court

---

[111] Docket 74-1 (SEALED) at 39.

[112] Docket 74-1 (SEALED) at 40–41.

[113] *Kalenka*, 262 P.3d at 604–05.

[114] *Id.* at 609.

[115] *Id.* at 609.

[116] 19 P.3d 588, 591–93 (Alaska 2001); *see also Kalenka*, 262 P.3d at 609–10 (stating that the

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, LLC, et al.*
Order on Motions for Summary Judgment
Page 25 of 37

Case 3:23-cv-00146-SLG     Document 168     Filed 01/14/25     Page 25 of 37

appeared to credit the plaintiff's argument that the act of violence did not sever the causal chain because, under the plaintiff's version of the facts, the attack required the use of the truck "*as* a truck."[117]

Here, the alleged delay does not sever the causal chain, as Mr. Horvath's subsequent injuries arose from the helicopter's use as a helicopter. Mr. Horvath's injuries stem initially from the helicopter crash—an undisputed use of the helicopter.[118] Indeed, when rescuers reached Mr. Horvath, he was still inside the helicopter.[119] Although Mr. Horvath alleges in his state court action that the delay caused or exacerbated his injuries, these injuries were inherently tied to and arose from the crash itself.

Additionally, the "use" of the helicopter in the heli-skiing operation is the precise use contemplated by both the Policy and the Heli-Skiing Contract Agreement between Triumvirate and Soloy.[120] Accordingly, injuries sustained by Mr. Horvath in the aftermath of the helicopter crash due to the delayed rescue

---

Court in *Shaw* "held that a driver's use of a vehicle to trap and corner another driver did not necessarily constitute an 'act of independent significance' even though it was intentional").

[117] *Shaw*, 19 P.3d at 592 (emphasis in original).

[118] *See* Docket 51-14 at 9–10 (noting injuries to his fingers due to frostbite, hypothermia, broken bones, joint injuries, and emotional distress).

[119] Docket 51-2 at 15.

[120] *See* Docket 70-3.

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, LLC, et al.*
Order on Motions for Summary Judgment
Page 26 of 37

Case 3:23-cv-00146-SLG    Document 168    Filed 01/14/25    Page 26 of 37

constitute bodily injuries "caused by an Occurrence and arising out of the . . . use of the Aircraft."[121]

Finally, National Union asserts that the delayed rescue operations were not "as respects Soloy's operations."[122] The Court disagrees. An additional insured such as Triumvirate would reasonably interpret this provision to limit its coverage under the Soloy Policy to when it was chartering a helicopter from Soloy for heli-skiing, and understand that it would not apply to Triumvirate's other business operations or if it chartered with a different helicopter company.

## II. The Individual Defendants Are Not Covered by the Policy.

Defendants assert that the Individual Defendants are "Insureds" under the Policy because they receive the same rights as Soloy's owners and the Policy's exclusions do not exempt them from coverage.[123] Failing that, Defendants submit that National Union cannot now claim the Individual Defendants are not covered because the National Union treated them as covered when it settled Mr. Horvath's claims.[124]

National Union responds that it has no duty to defend or indemnify the Individual Defendants because they are not additional insureds or insureds under

---

[121] Docket 51-4 at 2, 5.

[122] Docket 90-1 (SEALED) at 14; *see also* Docket 51-4 at 83 (Policy).

[123] Docket 86 at 20–21.

[124] Docket 86 at 24–25.

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, LLC, et al.*
Order on Motions for Summary Judgment
Page 27 of 37

the plain language of the Policy.[125] National Union also maintains that it "has never previously taken a position that the LLC members are additional Insureds."[126]

The Policy defines "Insured" as "not only the Named Insured but also any person while using or riding in the Aircraft and any person or organization legally responsible for its use, provided the actual use is with the express permission of the Named Insured."[127] However, this definition of "Insured" does not apply

> to any person or organization or to any agent or employee thereof (other than any employee of the Named Insured while acting in the course of his employment by the Named Insured) . . . who is charging a fee and/or receiving any remuneration or benefit for providing any type of service whatsoever in connection with the ownership, maintenance or use of any insured Aircraft.[128]

Additionally, the Policy included an Additional Insured Endorsement, which provides that "[t]he scheduled persons or organizations are included as additional Insured under liability coverages, but only as respects operations of [Soloy]."[129] Under the heading "Schedule," the Policy states, "as required by [Soloy]."[130] The Helicopter Services Agreement between Soloy and Triumvirate specifies that "the

---

[125] Docket 74-1 (SEALED) at 34–37.

[126] Docket 90-1 (SEALED) at 17.

[127] Docket 51-4 at 15.

[128] Docket 51-4 at 15.

[129] Docket 51-4 at 83.

[130] Docket 51-4 at 83.

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, LLC, et al.*
Order on Motions for Summary Judgment
Page 28 of 37

Case 3:23-cv-00146-SLG     Document 168     Filed 01/14/25     Page 28 of 37

Charterer will be named as an Additional Insured to its policy."[131]   Under the agreement, the "Charterer" is "Triumvirate LLC."[132]

Based on the foregoing, the Court finds that the Individual Defendants are not Insureds under the Policy.  None of the Individual Defendants was "using or riding in the Aircraft" at the time of the crash.  And none of the Individual Defendants was "legally responsible for [the helicopter's] use."  Although Mr. Horvath has now asserted a claim in his state court action seeking to pierce Triumvirate's corporate veil and hold the Individual Defendants personally responsible his injuries, a successful piercing of the corporate veil would still not make the Individual Defendants Insureds under the Policy's definition.

Further, the Individual Defendants are not Additional Insureds. The Helicopter Services Agreement between Soloy and Triumvirate requires that "the Charterer will be named as an Additional Insured" on the Policy.[133]   And that agreement explicitly defines the "Charterer" as "Triumvirate LLC" and does not include the Individual Defendants.[134]  Further, unlike partners in a partnership, LLC members are distinct legal entities from the LLC.[135]  Indeed, a member of an LLC

---

[131] Docket 51-3 at 6.

[132] Docket 51-3 at 2.

[133] Docket 51-3 at 6.

[134] Docket 51-3 at 2.

[135] *Cf. Simmons v. Ins. Co. of N. Am.*, 17 P.3d 56, 60–61 (Alaska 2001) (holding coverage extends to partners under an automobile insurance policy naming the partnership as the insured because

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, LLC, et al.*
Order on Motions for Summary Judgment
Page 29 of 37

Case 3:23-cv-00146-SLG    Document 168    Filed 01/14/25    Page 29 of 37

is not liable for the liability of the LLC solely by reason of being a member of the LLC.[136] Accordingly, it would make little sense to assume that a policy that insures an LLC would also extend to its members, who generally do not share in its liability.

Defendants' quasi-estoppel argument also fails. "Quasi-estoppel is an equitable doctrine that preclud[es] a party from taking a position so inconsistent with one he has previously taken that circumstances render assertion of the second position unconscionable."[137] "Among the many factors [courts] consider in applying quasi-estoppel are: (1) whether the party asserting the inconsistent position has gained an advantage or produced some disadvantage through the first position; (2) the magnitude of the inconsistency; (3) whether changed circumstances tend to justify the inconsistency; (4) whether the party claiming estoppel relied on the inconsistency to his detriment; and (5) whether the first assertion was made with full knowledge of the facts."[138]

Without citation, Triumvirate asserts that National Union "included the Triumvirate Members within the Horvath Settlement's release and in doing so gained the advantage of settling Horvath's claims and avoiding further defense

---

a partnership is not a distinct legal entity from its partners).

[136] Alaska Stat. § 10.50.265.

[137] *Cooper Leasing, LLC v. Woronzof Condo. Ass'n*, 548 P.3d 636, 645 n.15 (Alaska 2024) (alteration in original) (internal quotation marks and citation omitted).

[138] *Rockstad v. Erikson*, 113 P.3d 1215, 1223 (Alaska 2005) (internal quotation marks and citation omitted).

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, LLC, et al.*
Order on Motions for Summary Judgment
Page 30 of 37

expenditures."[139]  Having reviewed the Confidential Release of Specified Claims, the Court assumes that Triumvirate refers to a provision that purports to release "Triumvirate LLC, and its related entities, subsidiaries, affiliates, successors, parent corporations, predecessors, officers, agents, employees, servants, representatives, attorneys, insurers, reinsurers, underwriters, as well as all other persons, firms, corporations subsidiary to and/or in privity with them, including, but not limited to, all and each of them" from certain claims Mr. Horvath might bring.[140] However, this release does not constitute National Union's adoption of a position that the Individual Defendants are covered by the Policy.  Moreover, the Individual Defendants did not rely on this asserted inconsistency to their detriment.  Although Triumvirate asserts that the Individual Defendants relied on National Union's assertedly inconsistent position in choosing not to seek additional insurance coverage, it is highly improbable that they could have obtained insurance that would have retroactively covered their liability stemming from the helicopter crash and its aftermath.

For the foregoing reasons, the Court finds that the Individual Defendants are not Additional Insureds under the Policy.

---

[139] Docket 86 at 24.

[140] Docket 53-2 (SEALED) at 2.

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, LLC, et al.*
Order on Motions for Summary Judgment
Page 31 of 37

Case 3:23-cv-00146-SLG    Document 168    Filed 01/14/25    Page 31 of 37

## III. It Is Premature to Conclude that the Policy's Exhaustion Obviates National Union's Duty to Defend.

National Union asserts that the Policy does not require it to defend or indemnify Mr. Horvath's claims, and that Triumvirate can have no reasonable expectation to the contrary, because the Policy's limits have been exhausted and an express provision of the Policy extinguishes National Union's duties after it pays the Policy's limits.[141] It further maintains that it was not required to include Triumvirate's counsel in settlement negotiations and, in any event, the record shows that Triumvirate's attorneys were made aware of the terms of the release, undercutting any allegation of bad faith.[142] And National Union asserts that Defendants have not met the procedural requirements for a Rule 56(d) extension.[143]

Defendants respond that "an insurer cannot use the doctrine of exhaustion when it has acted in bad faith" by negotiating a settlement that exhausted the policy limits.[144] And they assert that the record before the Court amply demonstrates that National Union acted in bad faith when it negotiated a release for Triumvirate that exposed it to additional claims while negotiating a more protective release for

---

[141] Docket 74-1 (SEALED) at 28–32.

[142] Docket 90-1 (SEALED) at 5–9.

[143] Docket 90-1 (SEALED) at 9–10.

[144] Docket 86 at 5 (citing *Singh v. Zurich Am. Ins. Co.*, 428 P.3d 1237, 1244 (Wash. Ct. App. 2018)).

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, LLC, et al.*
Order on Motions for Summary Judgment
Page 32 of 37

Soloy.[145]  In particular, Defendants point to National Union's alleged exclusion of Triumvirate "from any knowledge of or involvement in [its] negotiations" with Mr. Horvath's counsel, the difference in language between the two releases, and National Union's failure to file an action for declaratory relief to determine its obligations before it paid the Policy limits.[146]  Defendants also suggest that, because discovery with respect to National Union's bad faith is ongoing, the Court should decline to rule on whether exhaustion excuses National Union's duty to defend until a jury determines whether National Union acted in bad faith.[147]

The Policy includes an exhaustion provision, which provides that National Union "shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of [National Union]'s liability has been exhausted by payment of judgments or settlements."[148]  There is no dispute that National Union paid the $1,000,000.00 per person policy limit plus add-ons to Mr. Horvath.[149]  Therefore, the Policy's limit has been exhausted.  However, there remains a dispute as to whether National Union acted in bad faith during settlement

---

[145] Docket 86 at 5–8.

[146] Docket 86 at 6–8.

[147] Docket 86 at 7–8.

[148] Docket 51-4 at 6.

[149] Docket 51-4 at 2, 35 (policy limit); Docket 53-2 (SEALED) (settlement agreement).

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, LLC, et al.*
Order on Motions for Summary Judgment
Page 33 of 37

Case 3:23-cv-00146-SLG     Document 168     Filed 01/14/25     Page 33 of 37

negotiations with Mr. Horvath and whether this bad faith, if proven, would impact National Union's duty to defend.[150]

The Alaska Supreme Court has not directly addressed whether an insurer's duty to defend always terminates once the insurer has paid the policy limits, or if there are circumstances where the duty persists. When an issue of state law arises and "the state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case."[151] On this topic, other state courts have recognized that, under certain circumstances, payment of the policy limits is not enough to extinguish a duty to defend.

For example, in *Brown v. Lumbermen's Mutual Casualty Co.*, the North Carolina Supreme Court documented a practice where insurers tendered the policy limits to a court to satisfy any judgment upon a determination of liability.[152] The court concluded that unilaterally tendering the limits to the court or to the

---

[150] Defendants primarily focus on the duty to defend, but on occasion assert that if bad faith is established, National Union could also have a duty to indemnify in excess of the policy limits. *See, e.g.*, Docket 26 at 19–20. The elements of the bad faith claim and the damages recoverable if proven have not been briefed by the parties nor established by the Court at this stage of the case, so the Court declines to resolve this issue at this juncture.

[151] *Med. Lab'y Mgmt. Consultants v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).

[152] 390 S.E.2d 150, 154–155 (N.C. 1990) (collecting cases); *see also Pareti v. Sentry Indem. Co.*, 536 So. 2d 417, 423 (La. 1988) ("The concern that in some cases an insurer might attempt to circumvent its duty to defend the insured by making an 'early escape' from the litigation is a valid one.").

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, LLC, et al.*
Order on Motions for Summary Judgment
Page 34 of 37

Case 3:23-cv-00146-SLG     Document 168     Filed 01/14/25     Page 34 of 37

claimant directly did not relieve the insurer of its duty to defend.[153] "[S]imply exhausting the limits in *any* manner" is not enough.[154] Other state courts have taken similar approaches and held that an insurer's duties are only exhausted if that insurer discharges its obligations to its insured—to settle or defend—in good faith.[155] However, "[a]n insurer which hastily enters a questionable settlement simply to avoid further defense obligations under the policy clearly is not acting in good faith."[156]

Given these decisions by other state courts, the Court finds it likely that the Alaska Supreme Court would conclude that exhausting a policy's limits is not always itself sufficient to eliminate the insurer's duty to defend. Rather, the exhaustion of the policy's limits would only satisfy an insurer's duties when the insurer executes a good faith settlement of the claims against the insured or a judgment is entered against the insured.

---

[153] *Brown,* 390 S.E.2d at 154–56; *see also Benchmark Ins. Co. v. Sparks*, 254 P.3d 617, 623 (Nev. 2011).

[154] *Brown,* 390 S.E.2d at 154 (emphasis in original).

[155] *See, e.g.*, *Pareti,* 536 So. 2d at 423 ("[T]he insurance company is held to a high fiduciary duty to discharge its policy obligations to its insured in good faith—including the duty to defend the insured against covered claims and to consider the interests of the insured in every settlement."); *Samply v. Integrity Ins. Co.*, 476 So. 2d 79, 83–84 (Ala. 1985) ("[W]e hold that the better rule of law is that an insurer, when it obligates itself to defend, as we find the insurer did in this case, cannot avoid its duty to defend against an insured's contingent liability by tendering the amount of its policy limits into court without effectuating a settlement or obtaining the consent of the insured."); *Douglas v. Allied Am. Ins.*, 727 N.E.2d 376, 381 (Ill. App. Ct. 2000) ("When an insurer merely tenders its limits, without obtaining a settlement of any claim for its insured, a strong argument exists that it has not exhausted its policy limits.").

[156] *Pareti*, 536 So. 2d at 423.

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, LLC, et al.*
Order on Motions for Summary Judgment
Page 35 of 37

Here, Defendants claim that National Union engaged in bad faith when it entered into a settlement with Mr. Horvath that related to his claims against Triumvirate. If proven, this bad faith could render the Policy's exhaustion provision inapplicable, at least with respect to the duty to defend. Therefore, the Court cannot yet determine whether the exhaustion of the Policy's limits satisfies National Union's duties with respect to Triumvirate. Because this is a threshold question, summary judgment on the parties' claims for declaratory relief regarding Triumvirate is not appropriate at this time. Therefore, the parties' cross-motions in that regard are DENIED. They may be renewed after the issue of bad faith has been determined.

## CONCLUSION

For the foregoing reasons, the Court rules as follows:

1. Triumvirate's Motion for Partial Summary Judgment at Docket 51 on Counterclaim II is DENIED.

2. National Union's Motion for Summary Judgment is GRANTED in part as to Defendants' Counterclaim 1 and National Union's Claim I, as National Union does not owe a duty of defense or indemnity to the Individual Defendants under the Soloy Policy.

3. Summary Judgment is DENIED to both parties on Counterclaim 2 and National Union's Claims II and III for Declaratory Relief. The Soloy Policy applies to Mr. Horvath's claims against Triumvirate for injuries arising in

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, LLC, et al.*
Order on Motions for Summary Judgment
Page 36 of 37

Case 3:23-cv-00146-SLG    Document 168    Filed 01/14/25    Page 36 of 37

the aftermath of the helicopter crash, but the impact of the exhaustion of the policy limits on National Union's present duty to defend, and potentially its duty to indemnify, is dependent on the resolution of Triumvirate's bad faith claim.

DATED this 14th day of January 2025.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, LLC, et al.*
Order on Motions for Summary Judgment
Page 37 of 37

Case 3:23-cv-00146-SLG    Document 168    Filed 01/14/25    Page 37 of 37