# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURGH, PA,

        Plaintiff and
        Counterdefendant,

    v.

TRIUMVIRATE, LLC, d/b/a Tordrillo
Mountain Lodge, *et al.,*

        Defendants and
        Counterclaimants.

Case No. 3:23-cv-00146-SLG

## ORDER ON PENDING MOTIONS

Before the Court are seven motions:

- At Docket 126 is Defendants Triumvirate, LLC d/b/a Tordrillo Mountain Lodge, Michael Rheam, Michael Overcast, Jennifer Overcast, and Thomas Moe's (collectively "Triumvirate") Motion for Reconsideration of the Court's Order granting non-party Tracey Knutson's Motion for Sanctions. At the Court's request, Plaintiff/Counterdefendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union") responded in opposition to the motion at Docket 137.

- At Docket 127 is National Union's Motion for Protective Order Pursuant to FRCP 26(c) and to Quash Subpoenas Pursuant to FRCP 45(d)(3).

Triumvirate responded in opposition at Docket 142, and National Union replied at Docket 152.

- At Docket 145 is National Union's Motion for Reconsideration.  At the Court's request, Triumvirate responded in opposition at Docket 163.

- At Docket 156 is Triumvirate's Motion for Clarification and Reconsideration.  At the Court's request, National Union responded in opposition at Docket 165.

- At Docket 155 is Triumvirate's Motion for Leave to Amend First Amended Counterclaim.  National Union responded in opposition at Docket 158, and Triumvirate replied at Docket 162.

- At Docket 176, Ms. Knutson renewed her request for sanctions.

- Finally, at Docket 180 is Triumvirate's Motion for Leave to File Supplemental Briefing.

## LEGAL STANDARDS

### I.    Reconsideration

Reconsideration requires "a showing of . . . manifest error of the law or fact; discovery of new material facts not previously available; or intervening change in the law."[1]  A motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised

---

[1] Alaska L.Civ.R. 7.3(h)(1).

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, et al.*
Order on Pending Motions
Page 2 of 25

earlier in the litigation."[2]  Reconsideration is "an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources."[3]

## II.    Amendment

"Once the district court ha[s] filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 which establishe[s] a timetable for amending pleadings," Rule 16's standard controls.[4]  Pursuant to that standard, the pretrial scheduling order can only be modified "for good cause."[5]  The "good cause" inquiry "primarily considers the diligence of the party seeking the amendment."[6]  While "prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification . . . [and] [i]f that party was not diligent, the inquiry should end."[7]  If the party shows "good cause" for modification of the scheduling order under Rule 16(b), then the party must demonstrate that amendment of the pleading is proper under Rule 15.[8]

---

[2] *See Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (discussing standard for Federal Rule of Civil Procedure 59(e)).

[3] *Id.* (quotation marks omitted).

[4] *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992).

[5] Fed. R. Civ. P. 16(b)(4); *see also Mammoth Recreations, Inc.*, 975 F.2d at 608.

[6] *Mammoth Recreations, Inc.*, 975 F.2d at 609.

[7] *Id.*

[8] *Id.* at 608 (citing *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C.1987)).

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, et al.*
Order on Pending Motions
Page 3 of 25

Case 3:23-cv-00146-SLG     Document 181     Filed 02/06/25     Page 3 of 25

**DISCUSSION**

## I. Triumvirate's Motion for Reconsideration of Order for Sanctions

Triumvirate asserts that the Court's order requiring it to pay a Rule 45(d) sanction to Ms. Knutson was based on an inaccurate statement of fact: that Triumvirate "failed to request discovery from a party before issuing the subpoena to Ms. Knutson."[9] Triumvirate maintains that it had requested the documents at issue from National Union in November 2023, that National Union's production after Triumvirate filed a successful motion to compel still did not include the documents, and that, until the hearing on Ms. Knutson's motion to quash, National Union had represented that it had produced all the responsive documents.[10] "It was only at the hearing . . . that National Union disclosed that it had not collected documents responsive to [Triumvirate's] discovery requests . . . and only at that hearing did National Union offer to do so."[11] Triumvirate now asserts that "it would be manifestly unjust in these circumstances to sanction [it] for seeking documents from Ms. Knutson when fault lies with National Union's ongoing failure to fulfill discovery obligations" and that "[i]f the Court determines that payment of Ms. Knutson's attorney's fees is appropriate, this Court should sanction National Union

---

[9] Docket 126 at 1–2 (quoting Docket 115 at 11).

[10] Docket 126 at 2.

[11] Docket 126 at 2.

in equal amount under Rule 37(b)(2)(C) for failing to obey this Court's order granting [Triumvirate's] motion to compel."[12]

National Union responds that it "timely complied with [this Court's order compelling discovery] by producing or identifying as privileged its entire claim file, including all communications between Ms. Knutson and Soloy's defense counsel Caryn Jorgensen . . . ."[13] National Union points out that Ms. Jorgensen is a non-party that National Union had retained to represent Soloy, that documents Ms. Jorgensen or her firm maintained were not in National Union's possession, custody, or control, and that, as a result, it was not required, or able, to produce such documents.[14] National Union notes that after "the Court's direction at the Conference, National Union asked Jorgensen to produce the documents Defendants sought, and Jorgensen voluntarily complied without making Defendants subpoena her."[15] Further, National Union contends that Triumvirate asserts for the first time in its motion for reconsideration that the documents Ms. Jorgensen produced should have been produced earlier by National Union and that, therefore, it is not a proper argument on reconsideration.[16]

---

[12] Docket 126 at 3.

[13] Docket 137 at 3.

[14] Docket 137 at 5.

[15] Docket 137 at 5–6.

[16] Docket 137 at 3–4.

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, et al.*
Order on Pending Motions
Page 5 of 25

Case 3:23-cv-00146-SLG     Document 181     Filed 02/06/25     Page 5 of 25

With respect to Triumvirate's request for sanctions, National Union asserts that Triumvirate issued its subpoena to Ms. Knutson months before the deadline that the Court established for National Union's document production, undercutting Triumvirate's contention that the Court's Rule 45 sanctions were caused by National Union's alleged discovery failings.[17] Moreover, National Union points out that Triumvirate's own refusal to produce documents from attorney Tim Lamb and Delaney Wiles contradicts its position that National Union was required to produce documents from Ms. Jorgensen.[18]

Having reviewed the record, the Court finds that reconsideration is warranted as Triumvirate took reasonable steps to avoid imposing an undue burden on Ms. Knutson. In November 2023, Triumvirate issued discovery requests to National Union that sought communications between National Union and Mr. Horvath regarding his claims against Soloy and Triumvirate and settlement, among other things.[19] However, by March 2024, National Union had produced very little: "only . . . 27 documents totaling 120 pages" and Triumvirate then moved to compel.[20] Although National Union had no obligation to seek documents from Ms. Jorgensen when it received Triumvirate's discovery requests in November 2023,

---

[17] Docket 137 at 5.

[18] Docket 137 at 6–7.

[19] *See* Docket 32-1.

[20] Docket 46 at 2 (citing Docket 32-1 at 2).

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, et al.*
Order on Pending Motions
Page 6 of 25

it nonetheless had not substantially complied with Triumvirate's requests for production until ordered to do so by the Court. In these circumstances, Triumvirate took reasonable steps to avoid imposing an undue burden on Ms. Knutson by first requesting discovery from National Union and moving to compel when National Union produced very little before issuing the subpoena to Ms. Knutson.

Additionally, several district courts in this circuit have held that "Rule 45 sanctions are for costs to comply with a subpoena, not contest it."[21] In the end, Ms. Knutson did not produce anything in response to the subpoena; rather, Ms. Knutson's costs are exclusively those she incurred in vigorously contesting it.[22]

Triumvirate's Motion for Reconsideration at Docket 126 is GRANTED. The Court declines to award sanctions to Ms. Knutson. Triumvirate's request for the sanction to be awarded against National Union is DENIED AS MOOT. And Mr. Knutsen's renewed motions for sanctions at Docket 176 is accordingly DENIED.

## II. National Union's Motion for Protective Order and to Quash Subpoenas

National Union moves for a protective order "precluding depositions of National Union's coverage attorneys, Andrew Houghton and Karen Schnur" and for an order quashing the subpoenas that seek these depositions.[23] National

---

[21] *Sci. Applications & Rsch. Assocs. (SARA), Inc. v. Zipline Int'l Inc.*, Case No. 3:22-cv-04480-JSC, 2024 WL 5011603, at *3 (N.D. Cal. Dec. 6, 2024); *see also Mount Hope Church v. Bash Back!*, 705 F.3d 418, 427–28 (9th Cir. 2012) (interpreting Rule 45's reference to "undue burden" as relating to burdens associated with compliance with a subpoena).

[22] *See* Docket 123-1.

[23] Docket 127 at 2.

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, et al.*
Order on Pending Motions
Page 7 of 25

Case 3:23-cv-00146-SLG     Document 181     Filed 02/06/25     Page 7 of 25

Union asserts that Triumvirate has not met the standard for depositions of counsel because Triumvirate can obtain the information it seeks by deposing Ms. Knutsen; it maintains Triumvirate can obtain the content of conversations between National Union's coverage counsel and Ms. Knutson with respect to the Horvath settlement.[24] National Union also notes that its communications with Ms. Knutson were quite limited. Indeed, National Union maintains that all non-privileged communications for which National Union's coverage counsel were senders or receivers have been produced and that the attorney depositions would only target attorney-client privileged or work-product protected information.[25] National Union further insists that Triumvirate cannot satisfy the primary test applied by district courts for depositions of counsel, the *Shelton* test*, or the alternative *Friedman* test.[26]

Triumvirate responds that neither test National Union cites is appropriate and that the Court should apply Alaska law because "the Ninth Circuit has not adopted the *Shelton* or *Friedman* tests" and "this is an Alaska case applying Alaska law . . . ."[27] Triumvirate further asserts that, under Alaska law, a party may depose an opposing attorney if the civil fraud exception to the attorney-client privilege

---

[24] Docket 127 at 11–12, 14.

[25] Docket 127 at 7.

[26] Docket 127 at 7–14 (citing *Shelton v. Am. Motors Corp*, 805 F.2d 1323 (8th Cir. 1986) and *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65 (2d Cir. 2003)).

[27] Docket 142 at 6.

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, et al.*
Order on Pending Motions
Page 8 of 25

Case 3:23-cv-00146-SLG     Document 181     Filed 02/06/25     Page 8 of 25

applies.[28]  Additionally, Triumvirate points out that federal courts in this circuit have not applied the *Shelton* test in the insurance bad faith context.[29]  Alternatively, Triumvirate maintains that the depositions are appropriate under *Shelton* and *Friedman*.[30]  Triumvirate asserts it has no other means of obtaining the information necessary to its bad faith claim as Ms. Knutson refuses to participate in a deposition and it is unreasonable to assume the entirety of the attorneys' discussions may be gleaned from documents.[31]  Moreover, Triumvirate asserts that the information it seeks is relevant to its bad faith claim and that National Union's privilege claims do not prohibit the depositions.[32]

"Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law."[33]  Discovery 'is a procedural matter governed in the federal courts by the Federal Rules of Civil Procedure.'"[34]

---

[28] Docket 142 at 7.

[29] Docket 142 at 7–8.

[30] Docket 142 at 8–12.

[31] Docket 142 at 8–9.

[32] Docket 142 at 9–11.

[33] *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

[34] *Iljas v. Ripley Ent. Inc.*, Case No. 18-cv-00136-JST, 2019 WL 13399751, at *1 (N.D. Cal. Sept. 11, 2019) (quoting *Hullinger v. Anand*, Case No. CV 15-7185 SJO (FFMx), 2016 WL 7444625, at *2 (C.D. Cal. Oct. 12, 2016) (quoting *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 285 (C.D. Cal. 1998))).

However, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."[35]

In general, "[a] party may, by oral questions, depose any person . . . ."[36] However, courts recognize that the taking of opposing counsel's deposition should be limited because such depositions disrupt the adversarial process.[37] "The Ninth Circuit has not issued a published decision governing depositions of opposing counsel either in the context of soliciting testimony about a pending case or about a concluded case."[38] In the absence of Ninth Circuit authority, district courts within the circuit routinely have applied a three-part test the Eighth Circuit adopted in *Shelton v. American Motors Corp.*[39] However, *Shelton* involved depositions of opposing counsel regarding a pending case, not, as is the case here, a concluded, negotiated settlement.[40] And, in *Pamida, Inc. v. E.S. Originals, Inc.*, the Eighth Circuit refined its holding in *Shelton* and held that *Shelton*'s test should not apply

---

[35] Fed. R. Evid. 501.

[36] Fed. R. Civ. P. 30.

[37] *See Shelton*, 805 F.2d at 1327 (citing *Hickman v. Taylor*, 329 U.S. 495, 513 (1947)).

[38] *ATS Prods., Inc v. Champion Fiberglass, Inc.*, Case No. 13-cv-02403-SI (DMR), 2015 WL 3561611, at *5 (N.D. Cal. June 8, 2015).

[39] *See, e.g., Younger Mfg. Co. v. Kaenon, Inc.*, 247 F.R.D. 586, 588 (C.D. Cal. 2007); *DiLorenzo v. Costco Wholesale Corp.*, 243 F.R.D. 413, 415 (W.D. Wash. 2007); *Torrey Pines Logic, Inc. v. Gunwerks*, LLC, Case No. 19-cv-02195-H-DEB, 2020 WL 6365430, at *2 (S.D. Cal. Oct. 29, 2020) (collecting cases); *Champion Fiberglass, Inc.*, 2015 WL 3561611, at *4 (same).

[40] *Shelton*, 805 F.2d at 1327.

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, et al.*
Order on Pending Motions
Page 10 of 25

Case 3:23-cv-00146-SLG    Document 181    Filed 02/06/25    Page 10 of 25

where a party seeks to depose opposing counsel about a prior, rather than a pending, case.[41]

Since *Pamida*, district courts within the Ninth Circuit have noted that *Pamida* limited *Shelton* and clarified that its three-part test does not apply where a deposition of counsel as a percipient witness would seek information about a prior matter.[42] Instead, in cases like *Pamida*, district courts have evaluated the propriety of a deposition of an attorney under the discovery standard in Rule 26(b) and under the law of any applicable privileges.[43] This Court will do the same.

Pursuant to Federal Rule of Civil Procedure 26(b)(1),

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Triumvirate states that, in these depositions, it "seeks to learn what National Union did in its claim investigation, what was said during calls with Mr. Horvath's counsel, National Union's mental impressions in light of relevant facts, and National Union's motivation for devising a skewed settlement with Mr. Horvath and

---

[41] 281 F.3d 726, 728-30 (8th Cir. 2002).

[42] *See Champion Fiberglass, Inc.,* 2015 WL 3561611, at *4–6 & n.6; *In re Allergan, Inc.*, Case No. 14--cv-02004-DOC-KES, 2016 WL 5922717, at *4 (C.D. Cal. Sept. 23, 2016); *Monolithic Power Sys., Inc. v. Dong*, Case No. 20-cv-06752-JSW (LB), 2023 WL 350400, at *7 (N.D. Cal. Jan. 20, 2023); *Gunwerks*, 2020 WL 6365430, at *2.

[43] *Gunwerks*, 2020 WL 6365430, at *2; *Champion Fiberglass*, 2015 WL 3561611, at *6.

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, et al.*
Order on Pending Motions
Page 11 of 25

Case 3:23-cv-00146-SLG     Document 181     Filed 02/06/25     Page 11 of 25

denying Triumvirate's tenders."[44]  Although the information Triumvirate seeks in its depositions of counsel is relevant to its bad faith claim, the Court has not yet concluded its *in camera* review to determine whether the civil fraud exception to the attorney-client privilege applies with respect to the topics proposed for the depositions.  Therefore, the Court cannot yet determine whether the proposed depositions will target privileged information.  Accordingly, National Union's motion for a protective order and to quash the subpoenas at Docket 127 is GRANTED at this time. Triumvirate may not depose National Union's counsel.  However, if, the Court concludes from its *in camera* review that the civil fraud exception may apply so as to vitiate the privilege, Triumvirate may renew its subpoenas for these depositions.

## III.    National Union's Motion for Reconsideration

At Docket 145, National Union moves the Court to reconsider its order directing it to submit for *in camera* review attorney-client privileged documents Triumvirate sought in a motion to compel.  National Union maintains the Court clearly erred in concluding that in an email authored by Soloy's attorney Caryn Jorgenson, Soloy raised concerns about what impact the Horvath settlement would have on Triumvirate.[45]  National Union argues that the Court misinterpreted Ms. Jorgensen's email, which it maintains only expressed her concern about the

---

[44] Docket 142 at 5–6.

[45] Docket 145 at 3 (referencing Docket 138 at 9 (citing Docket 122-1 at 5 and Docket 122-2 at 2)).

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, et al.*
Order on Pending Motions
Page 12 of 25

apportionment of future claims against Soloy, not Triumvirate.[46]  National Union

further submits that Ms. Knutson's email asking Ms. Jorgensen not to forward an

email objecting to the draft releases to "TML/Tim Lamb"  is not evidence that

National Union may have excluded Triumvirate from settlement negotiations in bad

faith, particularly as Triumvirate asked Ms. Jorgensen to take the lead in

negotiations, Ms. Jorgensen informed Triumvirate's insurer, Prime, that Mr.

Horvath was claiming injuries based on Triumvirate's delayed reporting and

rescue, and National Union provided the draft release to Triumvirate before the

settlement was concluded.[47]  In National Union's view, these facts contradict any

inference of bad faith derived from allegations that Triumvirate was not informed

about, or was excluded from, the settlement.[48]  And National Union claims that the

settlement itself does not evidence bad faith because it obtained a release of

Triumvirate to the "full extent" of the Policy's "aviation coverage."[49]

At the Court's request, Triumvirate responded in opposition at Docket 163.

Triumvirate maintains that "[t]he Court correctly interpreted Ms. Jorgenson's

email."[50]  Triumvirate reiterates the standard under which the Court conducted its

---

[46] Docket 145 at 3.

[47] Docket 145 at 4.

[48] Docket 145 at 4.

[49] Docket 145 at 5.

[50] Docket 163 at 3 (citing Docket 122-2 at 2).

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v.*
*Triumvirate, et al.*
Order on Pending Motions
Page 13 of 25

analysis—whether there is a factual basis to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies—and maintains that the evidence supports the Court's conclusion that "National Union's negotiation of the Horvath settlement may have favored one of its insureds at the expense of another."[51]   Indeed, Triumvirate insists that the release itself, by "adopt[ing] different language for Mr. Horvath's release of claims against Soloy than for his claims against Triumvirate," permits an inference of bad faith.[52]

Reconsideration of the *in camera* review order is not warranted on the bases National Union identifies.  The Court acknowledges that Ms. Jorgensen's email cannot reasonably be read to express a concern on her part about Triumvirate's exposure and the Court erred in so concluding.  Nonetheless, the evidence in the record as a whole supports the Court's conclusion that *in camera* review of National Union's claims file is warranted.  National Union also insists the release of Triumvirate is coextensive with the Policy's coverage.  But the Court has recently concluded otherwise, holding that the Soloy Policy covers injuries Mr. Horvath suffered due to the delayed rescue in the aftermath of the helicopter crash.[53]

---

[51] Docket 163 at 4.

[52] Docket 163 at 5.

[53] Docket 168 at 15.

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, et al.*
Order on Pending Motions
Page 14 of 25

For the foregoing reasons, National Union's Motion for Reconsideration at Docket 145 is DENIED.

## IV. Triumvirate's Motion for Clarification and Reconsideration

At Docket 156, Triumvirate moves for clarification and reconsideration of the Court's order at Docket 148. Triumvirate seeks clarification of four issues and reconsideration of the Court's conclusions with respect to Triumvirate's estoppel argument and bad faith claim.[54] At the Court's request, National Union responded in opposition at Docket 165.

First, Triumvirate points out that the Court's order did not address the work-product doctrine.[55] Triumvirate is correct. However, National Union's motion to compel did not argue that Triumvirate had waived work product protection.[56] Further, Triumvirate's opposition never raised the work-product doctrine as precluding the disclosure of certain documents.[57] And yet Triumvirate's privilege log reflects that it withheld production of many documents it identified as attorney work product.[58] In light of the foregoing, Triumvirate need not produce documents

---

[54] Docket 156 at 3–6.

[55] Docket 156 at 3.

[56] *See* Docket 101.

[57] *See* Docket 109.

[58] *See* Docket 101-11.

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, et al.*
Order on Pending Motions
Page 15 of 25

over which it asserted work product protection at this time. But National Union may file a renewed motion to compel that addresses this topic.

Second, Triumvirate writes that "it is unclear if the Court has ordered Triumvirate to produce all documents relating to the settlements of passengers other than Mr. Horvath regardless of privilege."[59] Triumvirate never raised the issue of attorney-client privilege with respect to these documents in its briefing to the Court.[60] Instead, it based its refusal to produce these documents solely on relevance.[61] Nonetheless, the Court's reasoning under *Hearn* regarding waiver of the attorney-client privilege of documents related to Mr. Horvath's settlement extends to documents related to the negotiation of settlements with respect to the other passengers. Therefore, to clarify, Triumvirate shall produce all documents concerning the other settlements but may limit its production to only those documents that reflect knowledge of the National Union/Horvath settlement negotiations, including all privileged documents but not documents for which work product protection was asserted. For example, documents concerning another settlement that compared that settlement's terms to the Horvath settlement terms must be produced.

---

[59] Docket 156 at 3.

[60] *See* Docket 109 at 13–14 ("Even if Triumvirate's knowledge of Mr. Horvath's intentions were at issue, National Union offers no plausible explanation for how Triumvirate's awareness of a third-party claim would make its knowledge of Mr. Horvath's intentions more or less true. As such, documents reflecting negotiations of other passenger's claims are not discoverable.").

[61] Docket 109 at 13–14.

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, et al.*
Order on Pending Motions
Page 16 of 25

Third, Triumvirate requests clarification as to "whether the Court found a broad waiver of all Triumvirate's attorney-client communications or only such communications that reflect knowledge of National Union/Horvath settlement negotiations."[62] Triumvirate notes "[i]t is unclear from the Court's order whether Triumvirate may redact non-responsive information contained in the privileged documents to be produced" and "submits that the standard approach of allowing redactions of non-responsive or non-waived privileged information, with the potential for *in camera* review, is required here."[63]

The Court did not find a broad waiver of privilege. Rather, it found that Triumvirate "impliedly waived the attorney-client privilege with respect to documents and communications between Soloy, Triumvirate and Prime related to the National Union/Horvath settlement" and ordered that Triumvirate "shall produce all unredacted documents and communications responsive to National Union's RFPs numbered 11–22."[64] Furthermore, *Gefre*, the case upon which the Court relied as creating a waiver exception to the attorney-client privilege in Alaska, does not require *in camera* review.[65] The Court will not conduct such a review with regard to these documents.

---

[62] Docket 156 at 4.

[63] Docket 156 at 4.

[64] Docket 148 at 15, 17.

[65] *Gefre v. Davis Wright Tremaine, LLP*, 306 P.3d 1264, 1279–80 (Alaska 2013).

Fourth, Triumvirate indicates the Court's seven-day deadline for production is onerous and requests the Court allow it 30 days to review and produce documents. The Court's Order was dated November 26, 2024. The requested 30-day extension has now elapsed, providing Triumvirate ample time to review its production. Therefore, the Court will not further extend the deadline further beyond **7 days from the date of this order**.

Lastly, Triumvirate asserts that the Court's interpretation of its estoppel argument is manifestly erroneous.[66] Even though its counterclaim expressly asserts that "[i]n light of their bad faith conduct, National Union is estopped from denying that it has a duty to defend or pay damages that were or will be incurred by Counterclaimants as a result of the Horvath Action[,]" Triumvirate insists it did not assert a claim for coverage by estoppel and thus Triumvirate has not put its attorneys' knowledge at issue.[67]

Even accepting Triumvirate's contention that the Court misinterpreted Triumvirate's estoppel allegation in its counterclaims, Triumvirate nonetheless waived the attorney-client privilege as the Court's order determined by putting its attorney-client privileged communications at issue. Triumvirate purports to assert a claim for bad faith in the insurance context. The Alaska Supreme Court has not

---

[66] Docket 156 at 4–5.

[67] Docket 156 at 5–6.

precisely defined the elements of the tort of bad faith in this context.[68] But presumably, to recover monetary damages or other relief, Triumvirate would need to show that National Union negotiated the settlement agreement with Mr. Horvath without Triumvirate's involvement.[69] Triumvirate's knowledge of the progress of settlement negotiations, the proposed terms of the releases between Mr. Horvath, Triumvirate, and Soloy, and the timing of this knowledge is certainly relevant to determining whether Triumvirate was damaged by National Union's alleged conduct. Indeed, Triumvirate alleges that National Union acted in an objectively unreasonable manner, and thus in bad faith, by failing to adequately communicate with Triumvirate.[70] And, in its own motion seeking to compel National Union to disclose its attorney-client privileged claim file, Triumvirate asserts that "National Union never disclosed the conflicts of interest to Triumvirate, but deliberately kept Triumvirate in the dark about the negotiations so that National Union could exercise sole control over the process."[71] Triumvirate further asserts that "[a]t the least, Triumvirate should have been kept informed about the status of the case

---

[68] *Lockwood v. Geico Gen. Ins. Co.*, 323 P.3d 691, 697 (Alaska 2014).

[69] The Court recently asked each side to file proposed jury instructions on bad faith. *See* Docket 177.

[70] *See* Docket 26 at 19, ¶ 44 (alleging "National Union breached this duty of good faith and fair dealing by, among other actions and failures to act, failing to adequately communicate with Counterclaimants during the settlement negotiations . . .").

[71] Docket 104 at 10 (internal quotation marks and alterations omitted).

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, et al.*
Order on Pending Motions
Page 19 of 25

and any ongoing negotiations so that it could protect its interests."[72]  Under Alaska law, parties "cannot be permitted to thrust their lack of knowledge into the litigation while simultaneously retaining the attorney-client privilege to frustrate proof of knowledge that negates the very foundation necessary to their positions."[73]  Triumvirate's assertions could be undercut if, for example, Triumvirate was well aware of the direction of the settlement negotiations between Soloy, Mr. Horvath, and National Union, but made a strategic decision not to participate in those negotiations knowing that Mr. Horvath was refusing to include claims against Triumvirate related to the reporting and rescue after the crash.  Thus, Triumvirate has put at issue its own knowledge of the settlement negotiations and impliedly waived the attorney-client privilege with respect to communications that may reflect that knowledge.

Accordingly, Triumvirate's Motion for Reconsideration at Docket 156 is GRANTED IN PART AND DENIED IN PART.  Triumvirate shall produce the documents specified in this Court's order at Docket 148 **within 7 days of the date of this order**, except that those documents Triumvirate identified as protected work product at Docket 101-11 need not be produced at this time.

---

[72] Docket 104 at 10 (internal quotation marks and alterations omitted).

[73] *Gefre,* 306 P.3d at 1280.

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, et al.*
Order on Pending Motions
Page 20 of 25

**V.      Triumvirate's Motion for Leave to Amend First Amended Counterclaim**

At Docket 155, Triumvirate moves to amend its First Amended Counterclaim to remove language the Court interpreted as asserting a claim for coverage by estoppel.  Triumvirate insists that it "never intended to assert or to seek recovery for a quasi-contract claim for coverage by estoppel, or any other claim based on detrimental reliance" and seeks that the Court allow it to amend its counterclaim to clarify.[74]  Triumvirate asserts that if it is permitted to amend its counterclaim, it will moot the need for discovery of attorney-client privileged documents.[75]  And Triumvirate contends that there is no undue delay, no prejudice to National Union as amendment will remove a potential claim to defend, and that amendment will not be futile.[76]

National Union responds that Triumvirate has not established good cause to modify the scheduling order as required by Rule 16, as there is no new information or other reason that Triumvirate could not have amended its pleading before the Court's scheduled deadline.[77]  Moreover, National Union asserts that the proposed amendment is futile and would not alter Triumvirate's bad faith claim

---

[74] Docket 155 at 2–3.

[75] Docket 155 at 2–3.

[76] Docket 155 at 7–9.

[77] Docket 158 at 5–6.

as the factual predicate for bad faith remains the same.[78]  And National Union contends that the motion to amend is prejudicial and made in bad faith because it seeks to circumvent the Court's order requiring the disclosure of certain documents over which Triumvirate asserted attorney-client privilege.[79]

Triumvirate moves under Federal Rule of Civil Procedure 15(a) to amend its counterclaim.  But the deadline to amend pleadings under Rule 15 has long since passed; therefore, Triumvirate must demonstrate "good cause" to modify the Court's scheduling order standard pursuant to Rule 16(b) before the Court may consider whether amendment of the counterclaim under Rule 15 is warranted. Pursuant to the Rule 16 standard, the pretrial scheduling order can only be modified "for good cause."[80]  The "good cause" inquiry "primarily considers the diligence of the party seeking the amendment."[81]

If the party shows "good cause" for amendment under Rule 16(b), then the party must demonstrate that amendment is proper under Rule 15.[82] Rule 15 provides that courts should "freely give leave [to amend] when justice so requires," and the Ninth Circuit has held that "this policy is to be applied with extreme

---

[78] Docket 158 at 6–8.

[79] Docket 158 at 8–9.

[80] Fed. R. Civ. P. 16(b)(4); *see also Mammoth Recreations, Inc.*, 975 F.2d at 608.

[81] *Mammoth Recreations, Inc.*, 975 F.2d at 609.

[82] *Id.* at 608 (citing *Forstmann*, 114 F.R.D. at 85).

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, et al.*
Order on Pending Motions
Page 22 of 25

liberality."[83]  "Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint.  Futility alone can justify the denial of a motion to amend."[84]

Triumvirate's proposed amendment would substitute the phrase "may not deny" for "is estopped from denying."[85]  This change would not materially change the factual allegations underlying Triumvirate's bad faith claim.  And, as the Court discussed above, the factual allegations underlying Triumvirate's bad faith claim mean that Triumvirate has waived the attorney-client privilege with respect to its knowledge of the Horvath settlement negotiations.  The proposed amendment is thus futile for its stated purpose, as it does moot the need for Triumvirate to disclose its privileged documents.  Triumvirate's Motion for Leave to Amend First Amended Counterclaim at Docket 155 is therefore DENIED.

## VI.    Triumvirate's Motion for Leave to File Supplemental Briefing

In light of the foregoing, Triumvirate's Motion for Leave to File Supplemental Briefing at Docket 180 is DENIED AS MOOT.  The Court instead looks forward to

---

[83] Fed. R. Civ. P. 15(a)(2); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (citation omitted).

[84] *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) (citation and internal quotation marks omitted).

[85] Docket 155-1 at 21.

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, et al.*
Order on Pending Motions
Page 23 of 25

the parties' submission of proposed jury instructions on Triumvirate's bad faith claim, which can also include commentary as to the rationale for each instruction.

## CONCLUSION

For the foregoing reasons, the Court rules as follows:

1.  Triumvirate's Motion for Reconsideration at Docket 126 is GRANTED. Accordingly, Ms. Knutson's Renewed Request for Sanctions at Docket 176 is DENIED AS MOOT.

2.  National Union's Motion for Protective Order and to Quash Subpoenas at Docket 127 is GRANTED.

3.  National Union's Motion for Reconsideration at Docket 145 is DENIED.

4.  Triumvirate's Motion for Clarification and Reconsideration at Docket 156 is DENIED IN PART AND GRANTED IN PART. Triumvirate shall produce the documents specified in this Court's order at Docket 148, as clarified herein, **within 7 days of the date of this order**, except that those documents Triumvirate identified as protected work product at Docket 101-11 need not be produced at this time.

5.  Triumvirate's Motion for Leave to Amend First Amended Counterclaim at Docket 155 is DENIED.

6.  Triumvirate's Motion for Leave to File Supplemental Briefing at Docket 180 is DENIED AS MOOT.

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, et al.*
Order on Pending Motions
Page 24 of 25

Case 3:23-cv-00146-SLG     Document 181     Filed 02/06/25     Page 24 of 25

DATED this 6th day of February 2025, at Anchorage, Alaska.

/s/ Sharon L. Gleason
UNITED STATES DISTRICT JUDGE

Case No. 3:23-cv-00146-SLG, *National Union Fire Insurance Co. of Pittsburgh, PA v. Triumvirate, et al.*
Order on Pending Motions
Page 25 of 25

Case 3:23-cv-00146-SLG        Document 181        Filed 02/06/25        Page 25 of 25